**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO.** |
| **Plaintiff,** | **JUDGE** |
| **vs.** | |
| **TERRY HILL, JR.,** | **INDICTMENT** |
| **Defendant.** | **18 U.S.C. § 2**<br>**18 U.S.C. § 1035**<br>**18 U.S.C. § 1347**<br>**18 U.S.C. § 1349** |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

      I.      INTRODUCTION

      1.      The **DEFENDANT TERRY HILL, JR. (DEFENDANT HILL)** was the owner and operator of Recovery Street Central (RSC) and Clearview Treatment Services (CTS).

      2.      RSC and CTS were counseling centers that provided alcohol and drug counseling related services at three (3) business offices located in the Southern District of Ohio: 4130 Linden Ave, Dayton, Ohio; 14 Bates Street, Dayton, Ohio 45402; 1100 Salem Avenue, Dayton, Ohio 45406. RSC and CTS also operated several sober living homes near their counseling offices which were occupied by clients receiving drug treatment counseling services from RSC and CTS.

      3.      RSC and CTS entered into provider agreements with the Ohio Medicaid Program (Medicaid). These agreements allowed RSC and CTS to submit claims for drug treatment counseling related services provided by RSC and CTS to Medicaid beneficiaries. According to

Medicaid records, RSC and CTS entered into Medicaid provider agreements on or about December 22, 2020, and July 17, 2024, respectively.

4. On or about May 18, 2021, **DEFENDANT HILL** was convicted of Medicaid Fraud, a felony of the third degree, in the Franklin County Court of Common Pleas, Case No: 20-CR-3338.

5. On or about June 2, 2021, as a result of the **DEFENDANT HILL's** felony conviction, **DEFENDANT HILL** was excluded from Medicaid.

II. THE VICTIM HEALTH INSURANCE PROGRAM

6. The information provided in this section describes the victim, Medicaid, and serves as the Fed. R. Crim. P. 12.4 Disclosure Statement.

a. The Ohio Medicaid Program

7. Medicaid, established by Congress in 1965, provided medical insurance coverage for individuals whose incomes were too low to meet the costs of necessary medical services. Approximately 60% of the funding for Medicaid came from the federal government.

8. Medicaid was administered by the State of Ohio, through the Department of Medicaid (ODM).

9. As part of the federally approved state plan, ODM elected to contract with Medicaid Managed Care Organizations (MCOs) through contracts known as Contractor Risk Agreements (CRAs), which were required to conform to the requirements of 42 U.S.C. §§1395mm and §1396b(m), along with any related federal rules and regulations. 42 U.S. Code § 1396u-2. MCOs were health insurance companies that provided coordinated health care to Medicaid recipients. The MCOs contracted directly with healthcare providers, including hospitals, doctors and other health care providers to coordinate care and provide the health care services for Medicaid recipients. Providers who contracted with a MCO were known as Participating Providers. These providers

likewise were required to enter into a "provider agreement" with the MCO in which the Participating Provider agreed to comply with all applicable state and federal statutes, regulations and guidelines. The provider agreement further required the Participating Providers to keep records necessary to fully disclose the services provided to Medicaid Beneficiaries.

10.     Participating Providers were assigned a unique provider identification number, which were necessary to be eligible to bill and receive reimbursement for services rendered to Medicaid recipients.  As part of Medicaid, Medicaid MCOs and the Participating Providers were required to furnish medical and health-related services pursuant to the state plan.  Pursuant to the CRAs, ODM distributed the combined state and federal Medicaid funding to the MCOs, which then paid Participating Providers for treatment of Medicaid recipients. As the administrator of Medicaid, ODM tracked all services received by recipients, whether enrolled directly with ODM or enrolled with a MCO.  Therefore, Medicaid MCOs were required to submit to ODM encounter data, which includes detailed records of the services a Medicaid recipient received from a Participating Provider.

     b.   Medicaid Reimbursements

11.     Providers who rendered services to Medicaid beneficiaries used a number assigned to the beneficiaries to fill out claim forms.  The claim forms were submitted by the provider to make claims for payments from Medicaid.  Providers could submit the claim forms in paper format or by electronic means. Medicaid processed each health insurance claim form and electronically deposited the claim payments into the provider's designated bank account or issued a check to the provider.

12.     Health care claim forms, both paper and electronic, contained certain beneficiary information and treatment billing codes. The American Medical Association assigned and published numeric codes known as the Current Procedural Terminology (CPT), and Healthcare Common Procedure Coding System (HCPCS) codes. The codes were a systematic listing or universal language used to describe the procedures and services performed by health care providers. The

procedures and services represented by the codes were health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b). They included codes for office visits, diagnostic testing and evaluation, counseling services, and other medical related services. These treatment and service billing codes were well known to the medical community, providers, and health care insurance companies.

13.    By submitting completed claim forms, the provider certified to the health care programs that: (1) the contents of the claim forms were true, correct, and complete; (2) the claim forms were prepared in compliance with the laws and regulations governing Medicaid; and (3) the services, as set forth in the claim forms, were provided and medically necessary.

14.    Medicaid providers agree to bill only for services actually rendered that are medically necessary to diagnose and treat illness or injury and for which the provider maintains adequate documentation.

c.    Exclusion from the Medicaid Program

15.    Ohio Administrative Code Section 5160-1-17-8 provided for the permanent exclusion for Medicaid providers who were convicted of felony Medicaid fraud.

16.    An individual who was permanently excluded from the Medicaid Program was prohibited from being associated with a Medicaid provider as an owner, officer, authorized agent, associate, manager, or employee. An excluded provider was further prohibited from receiving any compensation, directly or indirectly, for items or services furnished or rendered to recipients and reimbursed by the Medicaid Program in the form of salary shared fees, contracts, kickbacks, or rebates from or through any participating provider.

17.    The Ohio Medicaid program did not pay for services that were associated with an excluded individual.

4

## COUNT 1
HEALTH CARE FRAUD
[18 U.S.C. §§1347 & 2]

18.     Paragraphs 1 through 17 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

19.     Beginning on or about February 7, 2021, and continuing through on or about November 3, 2024, in the Southern District of Ohio, **DEFENDANT HILL**, knowingly and willfully executed a scheme to defraud a health care benefit program as defined in 18 U.S.C. § 24(b), that is, the Ohio Medicaid Program, in connection with the delivery of, and payment for, health care benefits, items, or services, by owning and operating substance abuse treatment centers after having been permanently excluded from Medicaid, and by causing the submission of claims to Medicaid for drug treatment counseling sessions in violation of Medicaid laws, rules and regulations.

20.     It was part of the scheme that **DEFENDANT HILL** owned, operated and caused the submission of claims to Medicaid for RSC and CTS after having been convicted of Medicaid fraud and permanently excluded from participation in the Medicaid Program.

21.     It was further part of the scheme that following the exclusion from Medicaid, **DEFENDANT HILL** continued to engage in all operational functions at RSC and CTS, including hiring and firing of employees, establishing and paying employee wages, and controlling RSC and CTS finances.

22.     It was further part of the scheme that **DEFENDANT HILL** opened and was the signatory on RSC and CTS bank accounts and controlled the deposits, withdraws and all financial transactions associated with these accounts.

23.     It was further part of the scheme that in order to conceal his ownership interest and participation with services provided by RSC and CTS, **DEFENDANT HILL** had other individuals sign and submit Medicaid applications on behalf of RSC and CTS to Medicaid.

5

24.     It was further part of the scheme that **DEFENDANT HILL** transferred over $1 million of Medicaid payments in RSC and CTS bank accounts into his personal bank accounts after he had been excluded from Medicaid.

25.     It was further part of the scheme that **DEFENDANT HILL** and others caused the submission of claims to Medicaid for group counseling sessions that substantially exceeded the one to twelve counselors to patient ratio required by Medicaid.

26.     It was further part of the scheme that **DEFENDANT HILL** directed others to submit RSC and CTS claims for group counseling sessions to Medicaid that falsely indicated that the services were rendered by counselors who were not present at RSC or CTS on the dates and at the times provided on the submitted claims.

27.     It was further part of the scheme that **DEFENDANT HILL** directed others to submit claims for group counseling sessions facilitated by individuals who were unlicensed and unqualified to provide group counseling sessions.

28.     It was further part of the scheme that **DEFENDANT HILL** caused the fraudulent submission of over $4 million dollars in claims to the Medicaid Program after having been permanently excluded from participation in the Medicaid Program.

**All in violation of 18 U.S.C. §§ 1347 and 2.**

**COUNT 2**
HEALTH CARE FRAUD
[18 U.S.C. §§ 1347 & 2]

29.     Paragraphs 1 through 17 and 21 through 28 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

30.     Beginning on or about February 7, 2021, and continuing through on or about November 3, 2024, in the Southern District of Ohio, **DEFENDANT HILL**, knowingly and willfully executed a scheme to defraud a health care benefit program as defined in 18 U.S.C. §

6

24(b), that is the Ohio Medicaid Program, in connection with the delivery of, and payment for, health care benefits, items, or services, by submitting or causing the submission of fraudulent claims: 1) for group drug treatment counseling sessions that were provided in excess of the one to twelve counselor to patient ratio required by Medicaid; 2) for group counseling sessions provided by unqualified counselors and; 3) that falsely reflected the counselor who facilitated the group counseling sessions.

**All in violation of 18 U.S.C. §§ 1347 and 2.**

## COUNTS 3-11
HEALTH CARE FALSE STATEMENTS
[18 U.S.C. §§ 1035 and 2]

31.     Paragraphs 1 through 17, and paragraphs 20 through 28 are realleged and incorporated by reference as though fully set forth herein.

32.     On or about the dates listed below, in the Southern District of Ohio, **DEFENDANT TERRY HILL, JR.** knowingly, willfully, and in connection with the payment for health care benefits, services, or items involving a health care benefit program, falsified, concealed, or covered up by trick or scheme, a material fact, that is, submitted or caused to be submitted bills to the Ohio Medicaid program for counseling services that were not provided, or provided in violation of Medicaid laws, rules and regulation as follows:

7

| Count | Beneficiary (Initials) | Date of Service | Approx. Claim Submission Date | Alcohol and Drug counseling services CPT Code | Amount of claim submitted ($) | Amount Paid ($) | Approx. Paid Date by Medicaid |
|---|---|---|---|---|---|---|---|
| 3 | C.L. | 09/16/2021 | 11/11/2021 | H0015 | 150.00 | 149.88 | 11/26/2021 |
| 4 | C.D. | 10/05/2021 | 10/20/2021 | H0015 | 150.00 | 149.88 | 10/28/2021 |
| 5 | I.B. | 11/18/2021 | 11/22/2021 | H0015 | 150.00 | 149.88 | 12/02/2021 |
| 6 | C.L | 03/07/2022 | 03/23/2022 | H0015 | 150.00 | 149.88 | 04/07/2022 |
| 7 | D.M. | 02/01/2023 | 02/08/2023 | H0015 | 150.00 | 149.88 | 02/15/2023 |
| 8 | D.M. | 02/05/2023 | 02/08/2023 | H0015 | 150.00 | 149.88 | 02/15/2023 |
| 9 | B.W. | 03/07/2023 | 03/09/2023 | H0015 | 150.00 | 149.88 | 03/15/2023 |
| 10 | P.C. | 04/07/2023 | 04/10/2023 | H0015 | 150.00 | 149.88 | 04/14/2023 |
| 11 | R.B. | 04/17/2023 | 04/20/2023 | H0015 | 150.00 | 149.88 | 04/26/2023 |

**All in violation of 18 U.S.C. §§ 1035 and 2.**

<u>COUNT 12</u>
Conspiracy to Commit Health Care Fraud
[18 U.S.C. 1349]

33.     Paragraphs 1 through 17, are realleged and incorporated by reference as though fully set forth herein.

34.     From on or about February 2, 2021, through on or about November 3, 2024, in the Southern District of Ohio, **DEFENDANT TERRY HILL, JR.** did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to violate 18 U.S.C. § 1347, that is, to execute a scheme to defraud a healthcare benefit program as

defined in 18 U.S.C. § 24(b), that is the Ohio Medicaid Program, in connection with the delivery or payment for health care benefits, items, or services.

## Purpose of the Conspiracy

35.     It was the purpose of the conspiracy for **DEFENDANT HILL** to perpetuate a health care fraud scheme to unlawfully enrich himself by billing or causing bills to be submitted for substance abuse counseling services that were provided in violation of Medicaid laws, rules and regulations.

## Manner and Means of the Conspiracy

36.     Paragraphs 20 through 28, are realleged and incorporated by reference as though fully set forth herein.

**All in violation of 18 U.S.C. § 1349.**

A TRUE BILL.

_s/Foreperson_____
FOREPERSON

KELLY A. NORRIS
ACTING UNITED STATES ATTORNEY

KENNETH F. AFFELDT (0052128)
Assistant United States Attorney

9